IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Mabel Holston,<br><br>                      Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart,<br>Commissioner of Social Security,<br><br>                     Defendant. | Civil Action No. 6:05-2675-TLW-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on July 22, 2002, alleging that she became unable to work on October 19, 2001. The application was denied initially and on reconsideration by the Social Security Administration. On September 16, 2003, the plaintiff requested a hearing. The administrative law judge, before

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

whom the plaintiff, her attorney, and a vocational expert appeared, considered the case *de novo*, and on January 7, 2005, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 22, 2005.  The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(1) of the Social Security Act and is insured for benefits through December 31, 2006.
>
> (2)    The claimant has not engaged in substantial gainful activity since October 19, 2001, the alleged onset of disability.
>
> (3)    The claimant's osteoarthritis and degenerative disc disease are "severe" impairments, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).
>
> (4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6)    The claimant has the residual functional capacity to perform light unskilled work with the restrictions of only occasional balancing, stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds, and the ability to alternate standing and sitting on an hourly basis.
>
> (7)    The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).
>
> (8)    The claimant's past relevant work as a battery charger was unskilled, light exertional level work (20 CFR §§ 416.965).

>   (9)    The claimant's osteoarthritis and degenerative disc disease do not prevent her from performing her past relevant work as a battery charger.
>
>   (10)   The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 416. 920(e)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

>   the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled

at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct

a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 54 years old on the date she alleged she became disabled, and 57 years old on the date of the ALJ's decision. The plaintiff has an eleventh-grade education and has worked in the vocationally relevant past as a fiberglass end-finder and battery charger. The plaintiff alleges disability since October 19, 2001, when she claimed she was laid off due to degenerative disc disease in her low back.

The evidence indicates that from 1998 to 2001, the plaintiff made periodic complaints of back pain to physicians at AGY, her employer (Tr. 301-43).

On June 1, 2000, the plaintiff presented to Dr. Douglas Holford with complaints of back pain radiating into her left leg. Examination showed back tenderness, a positive straight leg raising test, and trace leg weakness. Dr. Holford ordered an injection and an MRI, which showed two partially desiccated discs at L4-5 and L5-S1, with no rupture or impingement. A discogram performed on June 21, 2000, indicated degenerative disc disease, but Dr. Holford noted that the plaintiff was feeling better and released her to go back to work with restrictions (Tr. 261-64).

In July 2000, Dr. Holford noted that the plaintiff was doing "fair," but still had back pain (Tr. 260).

In November 2001, the plaintiff presented to Dr. Henry Tam, a family practitioner, with back pain radiating down the left leg. Dr. Tam noted a history of degenerative disc disease, and prescribed a pain and anti-inflammatory medications (Tr. 127).

A hand MRI ordered by Dr. Edwin Martinez de Andino, a rheumatologist, in February 2002 was suggestive of early mild osteoarthritis (Tr. 119).

In May 2002, the plaintiff presented with back pain and Dr. Tam refilled her medications (Tr. 125).

In August 2002, upon the plaintiff's complaints of feeling jittery and nervous, Dr. Tam diagnosed panic disorder and prescribed an antidepressant (Tr. 125).

In October 2002, Dr. Edmund Gaines, Jr., examined the plaintiff in connection with her application for benefits. Dr. Gaines noted the plaintiff's principle allegation was back pain, that she had arthritis and degenerative disc disease by history, and that she had never been diagnosed with a herniated disc. The plaintiff reported her back was doing "pretty good," and did well as long as she did not bend or stoop. She told Dr. Gaines she drove, cooked, and cleaned. Mental status examination showed the plaintiff was fully oriented, had a normal affect and good communication skills, could perform a cash transaction, spell "world" forward and backward, serially subtract from 20 by 3, and name the President and Vice President. Physical examination showed full range of motion in the upper extremities and cervical spine; full range of motion of the thumbs and digits bilaterally; good and equal strength, no muscle wasting, and full and bounding distal pulses in the upper and lower extremities; a somewhat antalgic gait; no knee crepitance; lumbar spine flexion to 40 degrees and extension to 18 degrees; negative straight leg testing in the sitting position and positive straight leg testing on the left in the supine position; intact cranial nerves; and a negative neurological exam. Dr. Gaines diagnosed osteoarthritis, degenerative disc disease by history, back pain secondary to osteoarthritis and

degenerative disc disease, and depression. He noted, "[o]n this physical examination, the examinee's symptoms are out of proportion to the physical findings." Dr. Gaines recommended lumbar spine images, which were normal, and a psychological evaluation (Tr. 166-70).

In November 2002, State agency psychologist Donald Hinnant, Ph.D., reviewed all the medical evidence and opined that the plaintiff did not have any severe mental or physical impairments. He also completed a psychiatric review technique form (PRTF) for the plaintiff in which he indicated that she had mild restrictions in maintaining social functioning; no restrictions in her activities of daily living or her abilities to maintain concentration, persistence, or pace; and no episodes of decompensation (Tr. 199, 211).

In December 2002, Dr. Martinez noted that, to that point, the plaintiff's hand symptoms had been controlled with aspirin and had improved, but that she had begun having recurring pain. Upper extremity examination showed osteoarthritic nodes bilaterally, mild restriction with range of motion due to guarding, and mild residual elbow discomfort. Neuromuscular exam was normal. Dr. Martinez prescribed an anti-inflammatory medication for osteoarthritis of the hands with degenerative disc disease and mild epicondylitis. Dr. Martinez also noted the plaintiff had mild depression (Tr. 118).

In March 2003, Dr. Tam prescribed an antidepressant for complaints of anxiety and depression (Tr. 122-23).

In June 2003, at the request of Disability Determination Services (DDS), Dr. Tam noted the plaintiff had intact thought processes, appropriate thought content, a worried/anxious and depressed mood/affect, and adequate concentration and memory (Tr. 121).

In July 2003, Karen Scott, Psy.D., reviewed all the evidence, opined that the plaintiff did not have a severe mental impairment. She also completed a PRTF for the plaintiff, in which she opined the plaintiff's mental impairments caused only mild restrictions

in her activities of daily living; no restrictions in her ability to maintain social functioning, concentration, persistence, or pace; and no episodes of decompensation (Tr. 173, 183-96).

As to the plaintiff's physical impairments, in July 2003, State agency physician Dr. William Crosby, III, reviewed the medical evidence and opined that the plaintiff's musculoskeletal impairment was severe and that she retained the residual functional capacity ("RFC") to lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk and sit for about six hours in an eight-hour workday; never climb ladders/ropes/scaffolds; and frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl (Tr. 173-82).

In August 2003, the plaintiff presented to Dr. Janice Hossler for an initial work-up. Examination revealed intact sensation, full strength, some tenderness, and positive straight leg raising test on the left. Dr. Hossler prescribed a pain medication and referred the plaintiff to a pain clinic for epidural injections in her back (Tr. 245-48). The plaintiff received injections on September 17, 2003, October 6, 2003, and October 23, 2003, from which she reported pain relief (Tr. 133-65).

In November 2003, the plaintiff presented to Dr. Hossler for follow-up and complete physical examination. Dr. Hossler noted the plaintiff reported fatigue and depression with no suicidal ideations, and that she slept fairly well and had a good appetite. Upon complaints of ongoing headaches, Dr. Hossler noted that a prior CT of the head was normal and that her headaches were likely tension headaches (Tr. 239-43).

In February 2004, Dr. Hossler noted the plaintiff did regular back exercises and tried to walk on a treadmill, but still had back pain radiating down her left leg. Examination showed tenderness at L4, L5, and S1, negative straight leg testing on the right, positive straight leg testing on the left at 60 degrees; intact sensation and full strength in the lower extremities; and absent Achilles reflexes. Dr. Hossler referred the plaintiff to a neurosurgeon and ordered a lumbar MRI, which showed degenerative disc disease with

mild diffuse disc bulge at L4-5 and L5-S1. Surgery was not recommended (Tr. 229, 232-34, 251-53).

In March 2004, Dr. Hossler noted that the plaintiff reported pain relief with her medications, that she was "moving a lot better today," and that she did "not appear to be in as much pain." Examination revealed the plaintiff was alert, fully oriented, and had some tenderness at the L4-5 and S1 levels (Tr. 229-31).

In April 2004, the plaintiff presented to Dr. Hossler complaining of problems with her "nerves" since running out of her antidepressant one and one-half weeks prior. Regarding her back, the plaintiff reported 25 percent improvement after receiving injections. Examination showed somewhat tearful, decreased affect; spinal tenderness at L4-5; and positive straight leg testing at 60 degrees on the left. Dr. Hossler diagnosed major depression and chronic low back pain with radiculopathy and prescribed an antidepressant medication and physical therapy (Tr. 222-25).

Dr. Hossler also completed a questionnaire in which she opined the plaintiff's pain was of disabling severity. Specifically, Dr. Hossler opined the plaintiff's pain was distracting to adequate performance of daily activities or work; that increased pain was likely to occur with physical activity so as to cause distraction from the task or even total abandonment of the task; that the plaintiff's medications caused mild side effects; that pain/medication side effects could be expected to be severe and limit her effectiveness due to distraction, inattentiveness, drowsiness, etc.; that the plaintiff would have long-term significant pain; and that treatments had no appreciable impact or only briefly altered the plaintiff's level of pain (Tr. 215-16).

Dr. Hossler noted in June 2004 that medication and physical therapy had helped the plaintiff's back pain, but that the plaintiff had stopped physical therapy due to financial concerns (Tr. 219-21).

At the administrative hearing on August 31, 2004, the plaintiff testified she worked at AGY for 24 years, first as an end-finder (Tr. 356-58), and for the most recent five years on light duty as a battery charger (Tr. 352). She testified she started working light duty because she could no longer bend and stoop due to back and left leg pain, and because of the "arthritis" and swelling in her right hand (Tr. 353-54, 358-59, 373-74). She said the battery charger job allowed her to sit for an hour at a time, that she "had the freedom to move around," and that sitting or standing was up to her as long as she got the work done (Tr. 353-55).

Regarding her back pain, the plaintiff testified she had constant pain due to degenerative disc disease at L4-5 (Tr. 367-68). She said pain debilitated her for "weeks" after a flare-up, which occurred about once per month (Tr. 370-71). She said she was treated with steroid injections, oral pain medications, physical therapy, and ice packs, and that surgery had been recommended (Tr. 366-70, 372). She said physical therapy "help[ed] a lot," but that she did not fully follow through because it "also put [her] in a lot of pain" (Tr. 372). She said her medications sometimes helped and that she had "a little" side effects (Tr. 370-72).

The plaintiff testified she also had "migraines," triggered by stress or loud noise, for which she had been taken to the emergency room (Tr. 359). She said she had headaches "all [her] life," that they had gotten worse over time, and that they usually lasted a day or two, and occurred once or twice per week (Tr. 360-64). She said her headache medications helped some (Tr. 362-63). The plaintiff also testified she had been taking antidepressant medication since approximately 1986 (Tr. 375-76).

As to her daily activities, the plaintiff testified she drove (Tr. 351-52), cleaned "once a week or month," and did not have any hobbies (Tr. 375). She said she could sit for an hour, stand/walk less than half an hour, and lift five pounds (Tr. 377-79).

A vocational expert, William Stewart, Ph.D., also testified the hearing. He testified the plaintiff's past work as a battery charger was light and unskilled with no transferrable skills (Tr. 382-83).

## **ANALYSIS**

The plaintiff alleges disability commencing October 19, 2001, due to osteoarthritis, degenerative disc disease of the spine with radiculopathy, chronic headaches, chronic pain, depression, and anxiety. The ALJ found that the plaintiff had the RFC to perform her former unskilled, light work as a battery charger, as she performed it (Tr. 21). The plaintiff alleges that the ALJ erred by (1) failing to properly analyze her ability to perform her past relevant work; (2) failing to properly explain his findings regarding her RFC; (3) failing to properly consider the pain evaluation of treating physician Dr. Janice R. Hossler; (4) failing to consider all of her impairments in making the RFC; and (5) failing to correctly assess her subjective complaints of pain.

The plaintiff first alleges that the ALJ erred in failing to properly analyze her ability to perform her past relevant work. The ALJ specifically found that the plaintiff could perform her past relevant work as a battery charger *as she performed it*. As noted by the plaintiff, this finding was critical as the plaintiff would have otherwise been found disabled under the medical-vocational guidelines (the "Grids") (pl. brief 12).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as she actually performed the work. SSR 82-62. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. §423 (d)(5). She must make a *prima facie* showing of disability by showing she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

11

> Social Security Ruling 82-62 states:
>
> Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

SSR 82-62, 1982 WL 31386, *3 (1982).

In this case, the plaintiff testified that she could no longer perform her battery charger job because she "had got to the point where [her] hands swelled and [she] couldn't even put the cable together anymore" (Tr. 354). She further explained that in her right hand her "joint swells up and I don't have too much strength in it. Then, like I said, in the jack room to push the cables together and that was a big problem that I had also" (Tr. 359). In addition to using her hands to do the job, the plaintiff further testified that her back and leg pain and migraine headaches also cause her great difficulty in trying to continue the battery charger job (Tr. 359-61). Dr. Edwin Martinez de Andino examined the plaintiff on December 11, 2002, to follow up on her hand osteoarthritis. His examination showed restricted range of motion in the plaintiff's hands due to discomfort, and his diagnosis was osteoarthritis of the hands. He prescribed Vioxx (Tr. 118). The ALJ accepted the osteoarthritis as a severe impairment, but he provided no discussion as to why the plaintiff's allegations of difficulty performing her former job due to osteoarthritis were not accepted. The plaintiff also alleged that she had difficulty attending work on many occasions as a

result of her severe headaches (Tr. 361-64), and her medical records show that she often complained of problems with chronic, severe headaches (Tr. 122, 124, 239, 245-46). However, the ALJ did not evaluate this alleged impairment's impact on the plaintiff's ability to perform her past work. The plaintiff testified that her back problems were the primary problem that kept her from being able to do her former work (Tr. 358) and, unlike the hand impairments and headaches, the ALJ did discuss his reasons for rejecting her testimony as to this impairment (Tr. 20). Upon remand, the ALJ should be directed to explain in accordance with SSR 82-62 why the evidence does not support each of the plaintiff's reasons for not being able to perform her former work.

        The plaintiff next argues that the ALJ failed to explain how he arrived at the restriction of the plaintiff to unskilled, light work activity with "restrictions of only occasional balancing, stooping, kneeling, crouching, and crawling and no climbing of ladders, ropes, or scaffolds and she should be allowed to alternate standing and sitting on an hourly basis, if needed" (Tr. 21-22). The ALJ stated in his decision that the plaintiff's RFC was based upon the overall record, "including the testimony of the claimant" (Tr. 21). As discussed below, the ALJ failed to properly assess the plaintiff's credibility. Accordingly, upon remand and after properly assessing the plaintiff's credibility, the ALJ should set forth the evidence supporting his finding of RFC. The plaintiff further complains that the ALJ improperly relied on the opinions of the state agency medical consultants. The plaintiff first contends that the ALJ should have considered the fact that the state agency physician who did the physical capacity assessment of the plaintiff in July 2003 did not have the treatment notes and assessment of Dr. Hossler. One of the relevant factors that is considered in deciding the weight to give to a medical opinion is "the extent to which an acceptable medical source is familiar with the other information in your case record." 20 C.F.R. §§404.1527(d)(6), 416.927(d)(6). The plaintiff further argues that the assessments are not a proper rationale for the RFC assessment because they do not correspond with the ALJ's findings. The state

13

agency doctors indicated the plaintiff could perform medium work activity while the ALJ found she could perform only a restricted range of light work. Upon remand, the ALJ should consider all factors that could have a bearing on the weight to which an opinion is entitled and explain the weight given to the findings of the state agency physicians. SSR 96-6p 1996 WL 374180, *2 (1996).

The plaintiff argues that the ALJ failed to properly consider the pain evaluation of treating physician Dr. Hossler. The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p, 1996 WL 374188. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

14

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

Dr. Hossler completed a questionnaire in which she opined the plaintiff's pain was of disabling severity. Specifically, Dr. Hossler opined the plaintiff's pain was distracting to adequate performance of daily activities or work; that increased pain was likely to occur with physical activity so as to cause distraction from the task or even total abandonment of the task; that the plaintiff's medications caused mild side effects; that pain/medication side effects could be expected to be severe and limit her effectiveness due to distraction, inattentiveness, drowsiness, etc.; that the plaintiff would have long-term significant pain; and that treatments had no appreciable impact or only briefly altered the plaintiff's level of pain (Tr. 215-16).

The ALJ found as follows in his decision:

> As I find Dr. Hossler's opinion to be unsupported by her treatment records and inconsistent with the other medical evidence of record, I cannot assign her opinion full weight. No other physician of record stated that the claimant was unable to work. The State Agency medical consultants determined that the claimant retains the capacity to perform work at the medium exertional level with the restriction of no climbing of ladders, ropes, or scaffolds. I find the opinions of the State Agency physicians consistent with the medical evidence of record to the extent that they find that the claimant can work. Social Security Ruling 96-6p.

(Tr. 21).

The ALJ's decision does not indicate what weight was actually accorded to Dr. Hossler's opinion, and the ALJ does not appear to have taken into account the evidence supporting the assessment, including the evidence that the plaintiff repeatedly complained of chronic pain and sought relief from pain through prescribed medications, large doses of over-the-counter medications, epidural steroid injections, and physical therapy. The ALJ also did not consider the length of the treatment relationship between the plaintiff and Dr. Hossler, the frequency of the examinations and the nature of the treatment relationship. Upon remand, the ALJ should be directed to specifically address the weight given to Dr. Hossler's assessment, to provide an explanation of the specific evidence contradicting the pain assessment, and to consider the evidence supporting the assessment.

The plaintiff next argues that the ALJ failed to consider all of her impairments in making the RFC assessment. The ALJ's RFC finding made no findings regarding any limitations with the use of the plaintiff's hands, even though he found that her osteoarthritis was a severe impairment (Tr. 20). The plaintiff contends that the ALJ failed to explain why her hand impairment was dismissed as inconsequential, and he did not address her headaches at all. Upon remand, the ALJ should be directed to discuss why the plaintiff's hand impairment and headaches cannot be accepted as consistent with the medical and other evidence. *See* SSR 96-8p. The plaintiff's argument that the ALJ failed to consider her depression and anxiety fails as the ALJ outlined the reasons why he found those impairments to only minimally affect her ability to perform work activity (Tr. 20).

The plaintiff argues that the ALJ failed to correctly assess her pain. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Subjective symptoms must be evaluated with due consideration of credibility, motivation, and medical evidence of impairment. Other factors the court considers in evaluating whether pain is

16

disabling are attempts to find relief from pain, willingness to try treatment, regular contact with a doctor, and daily activities. *Ward .v Apfel*, 65 F.Supp.2d 1208, 1213 (D. Kan. 1999) (citing *Luna v. Bowen*, 834 F.2d 161, 165-166 (10th Cir. 1987)). The ALJ discussed the plaintiff's back issues and found that the alleged severity of her back pain was not supported by the evidence (Tr. 20). The ALJ appears to have focused on the results that indicated "mild" findings (Tr. 20-21). However, as argued by the plaintiff, she has clearly established the existence of a medical condition capable of causing the alleged pain. Therefore, the ALJ should have evaluated her pain not based on clinical test results but based on the evidence in the file as to how the pain affects the plaintiff's life. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life."). As the Fourth Circuit Court of Appeals stated in *Mickles*:

> Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of producing pain is shown, subjective evidence of the pain can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree ( i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

*Id.* at 919-20.

Based upon the foregoing, upon remand, the ALJ should be directed to evaluate both the medical and lay evidence to determine the effect of the plaintiff's pain on her functional capacity. Importantly, the ALJ should consider the plaintiff's 30-plus year

17

work history in his assessment of her credibility (Tr. 55-56).  *See* SSR 96-7p, 1996 WL 374186, *5 (1996).

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

                                           s/William M. Catoe
                                           United States Magistrate Judge

October 25, 2006

Greenville, South Carolina